GORDON v. WOODRUFF COUNTY.

4-9327                                          232 S. W. 2d 832

Opinion delivered October 2, 1950.

*John D. Eldridge, Jr.,* for appellant.

*W. J. Dungan,* for intervener.

*J. Ford Smith,* for appellee.

GRIFFIN SMITH, Chief Justice. In 1928 E. E. Jeffries and his wife deeded to Woodruff County—"for county purposes only"—slightly more than 32 acres lying approximately a mile west of McCrory. If abandoned for county purposes the property would revert to the grantors. This is the third controversy involving use of the

land. See *Jeffries* v. *State, Use of Woodruff County,* 212 Ark. 213, 205 S. W. 2d 194; same, 216 Ark. 657, 226 S. W. 2d 810.

The Quorum Court, in appropriating funds for 1950, allotted $2,500 for use in constructing buildings for a county fair, and $300 for expenses pertaining to the fair.

Woodruff County Fair Association was incorporated by order of the Circuit Court as a non-profit organization to promote the live stock, agricultural, horticultural and related interests of the people generally. It has $1,200 for use in supplementing construction costs. The Association and the County, acting together, expect to receive public subscriptions as an aid to the project.

C. S. Gordon, a taxpaying citizen, brought an injunctive action against George P. Eldridge as County Judge, and against the Fair Association. He cited the condition in the Jeffries deed, contending that use to which the property would be put would place the grantor[1] in a position to invoke the reverter clause of his deed, and the County would lose its investment. Jeffries intervened. The Special Chancellor found that the appropriation was proper for county purposes, hence not contrary to the terms of the grant. The intervention was dismissed as premature. The appeal questions these determinations.

While the language of the Quorum Court appropriation must be looked to primarily in arriving at the contemplated purpose in authorizing the expenditure, it must not be presumed that there was an intent to violate Art. 12, Sec. 5, of the Constitution. It prohibits a county from becoming a stockholder in any company, association, or corporation. Neither may a county obtain or appropriate money for, or loan its credit to, any corporation, association, institution, or individual.

This provision of the Constitution was considered by the Court in an opinion written by Mr. Justice Wood in 1923, *Bourland* v. *Pollock,* 157 Ark. 538, 249 S. W. 21. Cities, towns, and other municipal corporations are in-

---

[1] Mrs. Jeffries died before the suit was begun.

cluded in the constitutional restriction. In the Bourland-Pollock case a federated welfare association was involved. Pollock was treasurer of the association and received monthly from the Ft. Smith board of commissioners the sum of $125 to be expended for activities the City itself had authority to engage in. While holding that the "welfare association" did not come within the "inhibitory words of the Constitution," and hence there was no express application of Art. 12, Sec. 5, the opinion stated that in contributing to the welfare association or committee to carry on governmental work which the city should have performed through some agency, the municipality in effect adopted the association as its own agency "to do the character of governmental work which manifestly the city authorities conceived could be better . . . done as through some instrumentality which was exclusively of its own creation and over which it had supreme control." A strong dissenting opinion by Mr. Justice HART was concurred in by Chief Justice McCULLOCH. They took the position that the money appropriated by the city was a gift for purposes the city had a right to engage in, but that in adopting the association as its agent (as expressed by the majority) the city lost control to such an extent that its duty of supervision was abdicated. It was also the view of the dissenting justices that the so-called "association" came within the terms of Art. 12, Sec. 5.

But should we agree with Judges HART and McCULLOCH to the extent of impairing the majority holding that the Association was within the constitution's prohibitory language, that alone would not sustain the position of appellant and intervener. It would be necessary to go further and say that the appropriation by Woodruff County was *to* the Fair Association, a contribution or gift over which the County lost its property rights and surrendered all control. Proof does not support this conclusion.

Gordon's complaint alleged that the Quorum Court's purpose in making the $2,500 appropriation was "to assist the County Fair Association in erecting permanent fair buildings on the lands" and that the work was

about to be undertaken. The intervener adopted all of Gordon's allegations, but also contended that use to which the property would be put was not a county purpose.

The County Judge testified that if not restrained the County Court would approve an allowance and direct issuance of warrants covering the appropriation; but, said he, the condition would be that the Fair Association should have possession of only a part of the ground for a limited period each year—that is, for the time necessary to prepare for the annual event and its incidents. The buildings would be owned by the County, and the Association would have access to them "for the week or ten days while the fair is in progress." During the remainder of the year these buildings would be used for storing [county] machinery and supplies.

Describing the fair as "the show window of farmer activities," John Miller, testifying as manager of the incorporated Association, said that $1,200 had been saved from former activities, and that his group intended to permit use of this fund as a part of the building program, but title to the realty would remain in the County, and subject to its control. There was no purpose on the part of those promoting the fair to make money. All profits would be reinvested in facilities or activities and rededicated to the general plan to aid agriculture and related undertakings.

Appellants cannot prevail if what is proposed to be done comes within the scope of *county purposes*. Courts have not hesitated to construe the Constitution as permitting activities not expressly recognized at the time the Constitution was adopted. Control and management of all County property are placed in the County Court. Ark. Stat's, Sec. 22-601, *Little Rock Chamber of Commerce* v. *Pulaski County*, 113 Ark. 439, 168 S. W. 848. In the Chamber of Commerce-Pulaski County case property owned by the County and not then used for county purposes, was sold to the Chamber of Commerce for $1 and "benefits to accrue to said county from the expenditure by said Chamber of Commerce of the funds raised for

the industrial and development purposes for the above described lands.'' In holding that the County Court had a right to make the sale and that the transaction was free from fraud, and not in contravention of Art. 12, § 5, of the Constitution, (pp. 444-5 of the Arkansas Reports) the Court in its opinion by Chief Justice McCulloch necessarily found that industrial development was a general county purpose in the sense that the County Court had power to evaluate prospects and to regard them as the equivalent of money; otherwise the admitted cash payment of $1 would have been so palpably inadequate as to amount to fraud. While fraud was not alleged, the opinion quite clearly reflects the Court's view that anticipatory values were the main consideration.

Births and deaths, and their registration, were not expressly mentioned in the Constitution (Art. 7, § 28), or in the Act of February 5, 1875 (Ark. Stat's, § 22-601), but expenditures for services by a local registrar were approved "for county purposes" in *Burgess v. Johnson County*, 158 Ark. 218, 250 S. W. 10. Agricultural and home demonstration agents and their work come within the broad scope of county purposes. *Smith and Buechley v. Hempstead County*, 180 Ark. 272, 21 S. W. 2d 178; *Watson and Smith v. Union County*, 193 Ark. 559, 101 S. W. 2d 791. See Ark. Stat's, Sec. 17-515 and 17-517. *Contra, Johnson v. Donham*, 191 Ark. 192, 84 S. W. 2d 374.

The General Assembly has expressly recognized county fairs (Act 44 of 1927) as agencies through which the agricultural, manufacturing, and educational interests of the community may be promoted when provision is made "for the exhibition and display of the products of the farms, orchards, vineyards, gardens, manufacturing industries, and the display of the work of the pupils in the public schools of the County, and [the display of] domestic fowls and animals, for the benefit of the public, *and not for individual or personal profit.*"

In view of the limitation and restrictions attending expenditure of the $2,500—a sum available only when the County Court directs issuance of warrants—the transaction falls within the scope of county purposes, as de-

fined by this Court. Special Chancellor Norton properly declined to enjoin.

Having decided that the expenditure was for an authorized activity or county purpose, it follows that construction of the buildings and their part-time use by the Fair Association do not conflict with the Jeffries grant, hence it is unnecessary to say whether the intervention was premature.

Affirmed.