832

5-3442                      384 S. W. 2d 955

Opinion delivered December 21, 1964.

*Macom & Moorhead,* for appellant.

*George E. Pike,* for appellee.

ED. F. McFADDIN, Associate Justice. The question here posed is whether the Quorum Court of Arkansas County has the legal authority to appropriate, and the County Court of Arkansas County has the legal authority to expend, County funds for the erection of a building on County property to house historical relics of particular interest to the County.

The appellee (plaintiff below), J. Y. Henderson, brought this suit as a citizen and taxpayer of the County, to enjoin the appellants (defendants below) from making such expenditures, as previously appropriated by the Quorum Court. The said appellants are: Harold Kendall, County Treasurer; W. B. Norsworthy, County Clerk; and John L. Peterson, County Judge and presiding officer of the Quorum Court.[1] The cause was presented to the Chancery Court on stipulated facts, pertinent portions of which we now copy:

"For more than four years last past there has been located at Arkansas Post State Park in the South end of Arkansas County, Arkansas, a museum containing articles of historical significance and artifacts having historical significance and value to the people of Arkansas

---

[1] Ark. Stat. Ann. § 17-401 (Repl. 1956) gives the composition of the Quorum Court, and Ark. Stat. Ann. § 17-409 (Repl. 1956) states the order of making appropriations.

County, Arkansas, and to others interested in the history of Arkansas Post and Arkansas County, Arkansas, donated or lent to such museum by residents of Arkansas County and by others. Among the articles, relics and artifacts contained in said museum are articles which have historical interest and significance to persons visiting said museum applicable to the period when Arkansas Post was territorial capitol of Arkansas and applicable to the period of the Civil War and later dates. Said articles are presently, and at all times herein mentioned prior to the present have been, housed in a log cabin structure belonging presently to the State of Arkansas.

"The site of Arkansas Post State Park is in process of being acquired by the United States of America and in the immediate future will be, and become, a National Monument owned by the United States of America, and administered under the juridiction of the National Park Service of the United States Department of Interior . . . Arkansas County . . . will lose all control and jurisdiction over the structure occupied by said museum upon acquisition of said site by said National Park Service.

"National Park Service, aforesaid, has announced publicly and has established the policy that in the development of the Arkansas Post National Monument the historical significance of such site from a National Monument standpoint will be the French and Spanish Territorial period, and that only secondary emphasis will be given to the historical significance of the site as the first territorial capitol of Arkansas and as the site of an important Civil War battleground, and that no museum will be provided for the assembling of relics and artifacts of historical significance to this period of the history of such site.

"Considerable public interest has been developed among the citizens of Arkansas County for the preservation and extension of the museum presently located in Arkansas Post State Park . . ."

The stipulation further stated (and we synopsize): that the Quorum Court in 1962 appropriated $2,400.00

for the purchase of suitable grounds for the location of the museum building; and a tract of 2.13 acres was deeded to the County in April 1963. Then at the Quorum Court meeting in November 1963, the sum of $30,000.00 was appropriated[2] for the erection of a building on the acquired land, to be known as the Arkansas Post Museum. Again, we further quote from the stipulation:

"Said museum if constructed, will be owned and maintained by Arkansas County, Arkansas, and will house the historical relics and artifacts presently housed in the Arkansas Post State Park and Museum and such other historical relics and artifacts as may hereafter be made available to it, and will be operated for public use and enjoyment.

"That if such museum be constructed, the lands acquired by the County for the site of said museum and not actually occupied by the structure will be landscaped and improved into a parking and recreational area in connection with the use of said building."

The prayer of the complaint was that the defendants be enjoined from expending any of the County funds for the museum building. The Chancery Court was of the opinion that the County had no legal right to expend County funds for the erection of said museum building, and accordingly the injunction was granted. This appeal challenges the correctness of said Chancery decree; and appellants list only one point:

"The Chancery Court erred in finding from the facts set forth in the stipulations, that the construction and operation of the proposed museum would not constitute a 'county purpose' as that term is defined and understood under the Laws of Arkansas."

Learned counsel for each side have thoroughly briefed this case, citing the Arkansas cases as well as those from other jurisdictions,[3] but we conclude that our

---

[2] The making of this 1963 appropriation and its expenditure constitute the cause of this litigation.

[3] Indicative of such study, we call attention to the following cases, selected from the brief of one side or the other: the English case of

own cases require reversal of the Chancery decree. We start with these facts: (a) the County already owns the land; (b) the Quorum Court has made the appropriation of $30,000.00 for the erection of the building; (c) the County has that amount available; and (d) the County and its officers will honor the appropriation and expend the money unless restrained. The question is, whether the County has the legal authority to expend County funds for such purpose.

The germane portion of Art. 7, § 28 of the Arkansas Constitution says: "The County Court shall have original jurisdiction in all matters relating to . . . the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties." The appellants insist that this museum building is either a "county purpose," an "internal improvement," or a matter of "local concern" to Arkansas County; and appellants insist that if this museum building be either one of the said matters, then the County Court has the legal right to make the said expenditure. Appellants also point out that the 1941 Legislature, by Act No. 291, which is now Ark. Stat. Ann. § 19-3601 (Repl. 1956), provided that: "Any . . . county may . . . acquire, equip, and maintain lands, buildings, or other recreational facilities; and expend funds for the operation of such program . . ."; and that this museum and grounds will be also a "recreational facility."

The appellees maintain, and the Chancery Court, in a scholarly Opinion, held, that this museum will be a matter of interest to the State, and not only to the County, and therefore is not a matter of mere local concern. In his Opinion the Chancellor pointed out that other

*Atty. Gen.* v. *Sunderland* (1875), Law Reports (Chancery Div.) Vol. 2, p. 634, Law Journal (1876) Vol. 45, p. 839; *Vale* v. *City of San Bernardino* (Calif.), 292 P. 689; *Board of Trustees of Phila. Museum* v. *Trustees of U. of Pa.*, 96 A. 123, Ann. Cas. Vol. 1917D, p. 449; *Aquamsi Land Co.* v. *City of Cape Girardeau* (Mo.), 142 S.W. 2d 332; *McClatchey* v. *Atlanta* (Ga.), 101 S.E. 682; *Hunter's Estate* v. *Colo.*, 49 p. 2d 1009, 101 A.L.R. 1202; *Hogge* v. *Rowan County* (Ky.), 231 S.W. 2d 8; *State* v. *Dickenson* (Fla.), 33 S. 514; and *Florida Power Corp.* v. *Pinellas Utility Board* (Fla.), 40 S. 2d 350.

buildings and locations relating to matters of historic interest are financed by the State,[4] and that such policy of the Legislature clearly indicates that it is for the State and not for the County to finance this enterprise.

We turn now to our own cases. In only one of them —*Johnson* v. *Donham*, 191 Ark. 192, 84 S.W. 2d 374— has this Court reached a restrictive result regarding "county purpose." In that case we held that a lew library for the Prosecuting Attorney of Pulaski County was not a "county purpose."[5] In other cases before and after the *Johnson-Donham* case, counties, either under the claim of "county purpose," "internal improvement," or "local concern," have been permitted to expend county funds for such matters as: (a) a local registrar for birth and death certificates (*Burgess* v. *Johnson County*, 158 Ark. 218, 250 S.W. 10); (b) agricultural and home demonstration agents (*Wilson and Smith* v. *Union County*, 139 Ark. 559, 101 S.W. 2d 791); and (c) county fair buildings (*Gordon* v. *Woodruff County*, 217 Ark. 653, 232 S.W. 2d 832).

One of the most enlightening cases is *Little Rock Chamber of Commerce* v. *Pulaski County*, 113 Ark. 439, 168 S.W. 848. In that case, Pulaski County owned certain real estate and deeded it to the Little Rock Chamber of Commerce for $1.00. This Court held that the County Court had the authority to sell its real estate and, in the absence of fraud or a grossly inadequate consideration,

---

[4] Attention was called to Ark. Stat. Ann. § 8-301 (Repl. 1956) regarding the Arkansas State War Memorial Building in Little Rock; also to Ark. Stat. Ann. § 8-205 (Repl. 1956) regarding the wartime capitol at Washington in Hempstead County, Arkansas; to Ark. Stat. Ann. § 8-201 (Repl. 1956) regarding the Arkansas Commemorative Commission; to Ark. Stat. Ann. § 8-601 (Repl. 1956) regarding the Prairie Grove Battlefield Commission; to Act No. 164 of 1961 regarding the Marks' Mills Battleground State Park; to Act 10 of 1961 regarding the Jenkins' Ferry Battleground State Park; and to Act No. 182 of 1961 regarding the Poison Springs Battleground State Park.

[5] The holding of that case was largely overcome by Act No. 245 of 1949, as now found in Ark. Stat. Ann. § 24-124 (Repl. 1962), wherein it was enacted that the Prosecuting Attorney could equip the law library out of the amount appropriated for "contingent expenses," and the legality of that Act has not been before us. Of course, we now have a statute providing for county law libraries (Ark. Stat. Ann. § 25-501 [Repl. 1962]).

the conveyance would stand. The consideration for the said deed, there involved, was the fact that the Little Rock Chamber of Commerce had accumulated large sums of money and property by gift from citizens and property owners "and was expending the same for public benefit in inducing the location of factories and other business enterprises in Pulaski County"; that it had thus induced certain large manufacturing plants to locate in the County and thereby increased the population of the said County and the revenues from taxation; and that the benefit to be derived by the County from increased revenues would amount to more than the value of the property conveyed. If a County can legally deed away its property for such considerations as those stated in the case, then certainly a County can assist in building a museum to attract visitors. Arkansas is trying to attract visitors. It will be recalled that Arkansas Post was probably the first settlement in the State of Arkansas. The Federal Government is directing its energies as regards Arkansas Post State Park toward the French and Spanish period; the people of Arkansas County desire to have something that will direct the attention of visitors toward the early Statehood of Arkansas and one of the battles fought in that vicinity. The fact that the Federal Government is not emphasizinng State and local history does not preclude the County from emphasizing it. Frequently the Federal Government has one aim in mind, and the local community has another.

Another enlightening case is *City of Blytheville* v. *Parks*, 221 Ark. 734, 255 S.W. 2d 962, in which we approved a bond issue by the City of Blytheville, with the proceeds to be used for the purpose of acquiring additional lands for an airfield which the City intended to deed immediately to the Federal Government. The question was, whether the City could issue bonds to acquire property to be deeded to the Federal Government and, after quoting *Little Rock Chamber of Commerce* v. *Pulaski County, supra,* we held that the City of Blytheville had such authority because it would be of benefit

to the community in several ways, one of which was increased visitors to the City.

The case of *Gordon* v. *Woodruff County, supra,* points unerringly to our conclusion. In that case 32 acres had been deeded to Woodruff County and the Quorum Court appropriated $2,500.00 to aid in the construction of a building for the county fair. The appropriation was challenged on the basis that such expenditure would not be for "county purposes." We held that the transaction fell within the scope of "county purposes." The purpose of a building for a county fair was to house exhibits to attract people to the fair. Here, the people of Arkansas County want to construct a building to house historical relics and other matters peculiar to Arkansas County to attract visitors. The same reasoning in *Little Rock Chamber of Commerce* v. *Pulaski County, supra; City of Blytheville* v. *Parks, supra;* and *Gordon* v. *Woodruff County, supra,* applies to the case at bar. There is no question of the availability of the funds. The only question is whether Arkansas County can expend the money for the building. We conclude that such expenditure may be legally made.

The decree of the Chancery Court is reversed and the cause is remanded to enter a decree in accordance with this Opinion.

GEORGE ROSE SMITH, & WARD, J.J., dissent.

———

GEORGE ROSE SMITH, J., (dissenting). Our earlier opinions have drawn a reasonably clear distinction between a State purpose and a county purpose. The most comprehensive discussion appears in *Cotham* v. *Coffman,* 111 Ark. 108, 163 S.W. 1183, which involved a statute requiring a county to contribute to the payment of a circuit judge's salary. In holding the statute unconstitutional we used this language:

"It is to our minds clear that the 'county purpose' referred to in the Constitution means some purpose peculiarly within the province, as distinguished from those general purposes left to the State at large—such, for instance, as for building bridges, courthouses, jails, taking care of the poor, making public roads, etc. . . . It is true that some of these county purposes, such as building courthouses and jails inure equally to the benefit of the State, but it is well understood that these things are provided for by the county. We think that the purpose can not, in the sense of the Constitution, be both a State and county purpose. It must be one or the other. . . . A State purpose must be accomplished by State taxation, a county purpose by county taxation, or a public purpose for any inferior district by taxation of such district. This is not only just, but it is essential."

The *Cotham* case was followed in *Fort Smith Dist. of Sebastian County* v. *Eberle,* 125 Ark. 350, 188 S.W. 821, where an act requiring a county to pay the salary of a State-appointed local registrar was declared to be unconstitutional. Again, in *Johnson* v. *Donham,* 191 Ark. 192, 84 S.W. 2d 374, we held that Pulaski county could not on its own initiative purchase a law library for the prosecuting attorney. That case involved a district that embraced only two counties, Pulaski and Perry. Since the population of the former was more than ten times that of the latter, it is evident that Pulaski county would actually have received almost the entire benefit from the proposed library. It was nevertheless our conclusion that the appropriation was not for a county purpose.

In the case at bar the only fact indicating that Arkansas Post is of peculiar interest to Arkansas county is its geographical location. Ever since the enactment of Act 57 of 1929 Arkansas Post has been a State park, maintained at State expense. The museum now in controversy has also been a State-supported facility. Of course it cannot be doubted that a former State capital is of historical importance to the State as a whole. That the park is being converted into a National Monument

demonstrates that its preservation is of value to the nation as well.

The proof shows that the acquisition of this museum will cost the county taxpayers $60,000, to be paid for in two years. There is also the matter of maintenance for the indefinite future. ·Neither the record nor the briefs indicate that the museum will attract any tourists who would not be brought to the county anyway by the National Monument alone. If, as we have held, a county cannot constitutionally contribute to the support of localized State functions from which the citizens of the county unquestionably derive a direct benefit, it seems to me that the constitution also forbids the use of county taxes for the support of a State park or a National Monument.