The Honorable John Bynum Prosecuting Attorney 110 S. Fulton Street Clarksville, AR 72830
Dear Mr. Bynum:
This is in response to Deputy Prosecuting Attorney Bruce R. Wilson's request for an opinion regarding the legality of certain county expenditures. The question posed is whether Johnson County may lawfully appropriate funds to the following:
(a) The Johnson County Boys Club.
(b) The Johnson County Girls Club.
(c) The Johnson County Development Corporation
 (d) The Rural Fire Districts that have been set up throughout Johnson County.
(e) The West Central Planning and Development District.
(f) The Johnson County Chamber of Commerce.
 (g) The Don E. Davis Center, a private institution for helping those with physical and mental handicaps.
 (h) The Johnson County Hospital Ambulance, the hospital is a County owned hospital that operates entirely on its own revenues with the exception of a $6,000 annual appropriation by the County that goes for the ambulance service and a 1 mil millage from the County.
This question revolves primarily around the language of Article 12
Section 5 of the Constitution of Arkansas which states:
 No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to any corporation, association, institution, or individual.
I have enclosed a copy of an Attorney General Opinion dated August 22, 1969 which addressed this question with respect to a Boy's Club. This Opinion would, obviously, also extend to a private non-profit Girl's Club.
While there are no Arkansas cases directly on point, I have also enclosed copies of two other Opinions [dated April 29, 1986 and September 23, 1986 (No. 86-198)] wherein the case of Bourland v. Pollock, 157 Ark. 538, 249 S.W.2d 360 (1923) is discussed with respect to county appropriations to various non-profit entities. The Arkansas Supreme Court, subsequent to its ruling in Bourland v. Pollock, offered some indication as to the extent of that decision. The court stated the following in the case of Halbert v Helena-West Helena Industrial Development Corporation, 226 Ark. 620,291 S.W.2d 802 (1956):
 The appellees cite the case of Neel v. City of Little Rock, 204 Ark. 568, 163 S.W.2d 525, 142 A.L.R. 1071, as a case in which we allowed a city to donate money to the Community Chest and say that, by the same token, we should allow cities to buy memberships in local development corporations organized under Act 404 [of 1955; the Arkansas Industrial Development Act]. But in Neel v. City of Little Rock some surplus money of a city was allowed to be given to a public charity, which saved the city from making certain expenditures: that is far different from the situation here. At all events, Neel v. City of Little Rock is a borderline case; and we refuse to extend the effect of its holding.
226 Ark. at 626. (Emphasis in original). The case of Neel v. City of Little Rock, supra, was decided based upon Bourland v. Pollock, supra. The Bourland decision was reviewed by the Supreme Court in Gordon v. Woodruff County, 217 Ark. 653, 232 S.W.2d 832
(1950) wherein the Court stated:
 In the Bourland-Pollock case a federated welfare association was involved. Pollock was treasurer of the association and received monthly from the Fort Smith board of commissioners the sum of $125 to be expended for activities the City itself had authority to engage in. While holding that the "welfare association" did not come within the "inhibitory words of the Constitution", and hence there was no express application of Art. 12, Sec. 5, the opinion stated that in contributing to the welfare association or committee to carry on governmental work which the city should have performed through some agency, the municipality in effect adopted the association as its own agency "to do the character of government work which manifestly the city authorities conceived could be * * * done as through some instrumentality which was exclusively of its own creation, and over which it had supreme control." It thus seems that a determination must be made with respect to the existence of an essential "governmental work" or function. The court in Bourland stated that the framers of Article 12, Section 5 of the Constitution of 1874 ". . . did not have in mind the prevention of municipal aid to committees, or other quasi municipal governmental agencies, to carry out the purposes of municipal government." 157 Ark. at 546-547. The language of the Bourland decision, and subsequent cases construing that ruling, suggest that a private, non-profit Boys Club or Girls Club will not be deemed to reflect characteristics essential to avoiding conflict with Ark. Const. Art. 12, 5.
The Arkansas Supreme Court's ruling in Halbert v. Helena-West Helena, supra, must be considered with respect to the Johnson County Development Corporation. The Court stated in that case:
 It would be doing indirectly what the Constitution forbids to be done directly, if a county or municipality were allowed to purchase a membership in the corporation, because such purchase of `membership' would certainly be granting financial aid to the said local corporation. When the Arkansas Legislature allowed the creation of local development corporations as private non-profit corporations, it could not at the same time allow counties or municipalities to grant financial aid to such corporations.
226 Ark. at 625. (Emphasis added). We have not been provided with information identifying the authority under which the Johnson County Development Corporation was established. While appropriations to governmental bodies formed for the purpose of industrial development would not appear to pose a problem [see, e.g., Gordon v. Woodruff County, 217 Ark. 653, 232 S.W.2d 832
(1950), wherein the Arkansas Supreme Court identifies industrial development as a "general county purpose"], it must be concluded that the appropriation of funds for private, non-profit corporations or associations will be prohibited under Article 12, Section 5. It should be noted, however, that a governmental agency's use of appropriated funds will also be subject to review under Article 12, Section 5.
While we find no cases directly on point with respect to rural fire protection districts, the Arkansas Supreme Court's consideration of challenges to the appropriation of county and city funds to other improvement districts may offer some guidance. The case of Bank of Commerce v. Huddleston, 172 Ark. 999,291 S.W. 422 (1927) involved an appropriation of city funds for an improvement district that was created in order to construct and maintain a system of waterworks and electric lights for the municipality. The court stated the following in rejecting a challenge to the appropriation under Article 12, Section 5.
Under this section of our Constitution, public money or the public revenue cannot be used or pledged in aid of private enterprises. . . . The object of the provision in the Constitution was to prevent municipal corporations from engaging in enterprises foreign to the purpose for which they were organized and assuming liabilities not within the compass of the usual and necessary powers of cities and towns. . . . In this State, improvement districts may be created in a city or town for the purpose of constructing waterworks and electric lights, and such districts may embrace the entire area of the city or town. (Citations omitted.) The cost of the improvement is obtained by means of special assessments levied upon the real property within the limit of the district, and the commissioners thereof are charged with a public duty; and such districts are in no sense private enterprises. (citation omitted). . . . In McDonnell v. Imp. Dist. No. 145 Little Rock, 97 Ark. 334, 133 S.W.2d 1126, under a statute providing that no single improvement shall be undertaken which alone will exceed in cost twenty per cent of the value of the real property in the district, it was held that the regulation was intended only to apply to the amount which could be assessed against the real property in the district and was not intended to limit the total costs of the improvement, where contributions from the city and county reduce the cost of the improvement within the specified percentage of the valuation of the realty within the district. It is evident that this holding would not have been made by the court if it had considered that the contribution made by the city or county contravened [Ark. 12, 5].
172 Ark. at 1003-1004 (Emphasis added); see also, Shofner v Dowell, 168 Ark. 229, 233, 269 S.W. 588 (1925). The court was explicit in stating that the city ". . . simply stipulated that it would pay a certain part of the cost of construction of a system of waterworks and electric lights, which were being constructed by a public agency and not by a private corporation or association of individuals. [The city] merely contributed a part of its public revenue for a public purpose." 172 Ark. at 1006. A similar conclusion was reached in the case of City of Paris v. Street Imp. Dist. No. 2, 206 Ark. 926, 175 S.W.2d 199 (1943) with regard to a municipal appropriation to a street improvement district. The court stated:
 Another contention is that the ordinance is void because violative of 5 of Art. 12 of the Constitution of 1874. . . . It is argued that the appropriation of money to appellee is a gift and violated said provision. . . . We think a street improvement district is not a company, association or corporation within the meaning of 5, Art. 12 of the Constitution. A street improvement district is not a private enterprise, or a business corporation or association, but is rather the municipality acting through an agency of its own creation. The city of Paris has the power to construct the improvements on the streets in appellee district without resort to the improvement district system, but, instead of doing so, it elected to create the district, with power to assess adjacent property for benefits accruing thereto, and to donate from its street funds annually city-wide aid.
It may be successfully contended, following the rationale set forth in these cases, that a fire protection district is engaged in a public purpose, as evidenced by the county's specific authority to make provision for fire prevention and protection services. See A.C.A. 14-14-802(b)(2)(D)(iii). These cases may also be relied upon for the proposition that the district, similar to a waterworks or street improvement district, is not a "company, association or corporation" within the meaning of Art. 12, 5. It is therefore my opinion that judicial precedent suggests the appropriateness of an expenditure of county funds on behalf of fire protection districts, although the funds should probably be appropriated on a county-wide basis in the absence of circumstances justifying a different distribution.
A similar analysis may be applied with respect to the West Central Planning and Development District. I assume that this question is asked with respect to the District formed pursuant to A.C.A.14-166-201 et seq. This body of law governs the formation of multi-county planning and development organizations to promote economic development and to prepare plans for improved government services. See 14-166-201.
The U.S. District Court for the Eastern District of Arkansas had occasion to address the function(s) of such a District in the case of Gilbreath v. East Ark. Planning Development Dist.,471 F. Supp. 912 (E.D.Ark. 1979) wherein a claim was raised under42 U.S.C. § 1983. The court stated the following in addressing the "state action" issue:
 Where as in the present case, a nonprofit corporation has been created by virtue of state law, the state government has provided significant financial support for the activities of the corporation, the state has delegated functions relating to the planning and delivery of public services to the corporation, the corporation has engaged in activities normally performed by governmental agencies, the corporation has worked in cooperation with various agencies or instrumentalities of state government and the supervision of the affairs of the corporation has been vested in a board of directors, the majority of which are local elected officials, the conduct of the "private" nonprofit corporation has become so entwined with governmental policies and so impregnated with a governmental character as to subject the conduct of the corporation to the institutional limitations placed upon state action.
471 F. Supp. at 922. While this case is certainly not directly on point, it does offer some insight into a Court's perception of the "governmental character" of a district formed under 14-166-201, et seq. It is also significant to note that local governmental funding of the districts is specifically envisioned under this legislation. See A.C.A. 14-166-205. And it is well-established that a presumption of constitutionality attends every legislative enactment and that all doubt will be resolved in favor of constitutionality. Stone v. State, 254 Ark. 1011, 498 S.W.2d 634
(1973) It is thus my opinion, based upon the foregoing, that the appropriation of funds to the West Central Planning and Development District will withstand constitutional scrutiny.
The Arkansas Supreme Court's refusal in Halbert v. Helena-West Helena Industrial Development Corporation, supra, to approve financial aid to a private development corporation supports the conclusion that the court would, similarly, reject appropriations to a county Chamber of Commerce. The case of Little Rock Chamber of Commerce v. Pulaski County, 113 Ark. 439, 168 S.W. 848 (1914) should, however, be reviewed wherein the court approved the sale of county property to the Chamber of Commerce for $1.00 "and benefits to accrue to said county from the expenditure by said Chamber of Commerce of the fund raised for industrial and development purposes for the above described land."113 Ark. at 441. Fraud was not alleged, and the court found consideration for the deed in the fact that the Chamber had accumulated large sums of money by gift and was expending it for public benefit in inducing the location of factories and other businesses; large manufacturing plants had already been induced to locate in the county. The Supreme Court noted, in a subsequent case, that ". . . anticipatory values were the main consideration" in Little Rock Chamber of Commerce v. Pulaski County. Gordon v. Woodruff County,217 Ark. 653, 657, 232 S.W.2d 832 (1950).
It is difficult to determine how far the court would extend the Little Rock Chamber ruling. It should be initially noted that in rejecting an argument based upon Article 12, Section 5, the court stated that "[t]he disposition of real estate owned by the county is not an appropriation of money within the meaning of the Constitution. . . ." 113 Ark. at 445. Thus, the sale of property for what was deemed by the Court to constitute adequate consideration is an element distinguishing that case from a situation involving a direct appropriation.
The court subsequently cited to the Little Rock Chamber case in the case of Gordon v. Woodruff County, supra, as a basis for its approval of a certain county appropriation. However, the county's retention of some control or specific interest offers another potential basis for distinction. An appropriation for use in a County Fair Association's construction of fair buildings was approved in Gordon v. Woodruff County wherein the court distinguished between an appropriation by the county ". . . to the Fair Association, a contribution or gift over which the County lost its property rights and surrendered all control,"217 Ark. at 655 (emphasis in original), and the situation at hand which involved the county's control, ownership and use of the new buildings. Id. The court cited to Little Rock Chamber in concluding that the proposal constituted a "county purpose," also stating that ". . . anticipatory values were the main consideration" in Little Rock Chamber. 217 Ark. at 657.
The foregoing discussion signals the necessity of reviewing all facts and circumstances surrounding an appropriation to the Chamber. It is my opinion that a direct appropriation, in the absence of other factors, will in all likelihood fail to withstand scrutiny under Article 12, Section 5. However, all aspects of the appropriation should be considered in light of the foregoing cases.
It is my opinion, with regard to the Don E. Davis Center, that the Arkansas Supreme Court's ruling in Halbert v. Helena-West Helena Industrial Development Corp., supra, points to the likely success of a challenge to this appropriation. The court in that case rejected appellees' attempt to rely upon the ruling in Neel v. City of Little Rock, 204 Ark. 568 , 162 S.W.2d 525 (1942), stating:
 But in Neel v. City of Little Rock, some surplus money of a city was allowed to be given to a public charity, which saved the city from making certain expenditures: that is far different from the situation here. At all events, Neel v. City of Little Rock is a borderline case; and we refuse to extend the effect of its holding.
226 Ark. at 626. (Emphasis in original).
Nell v. City of Little Rock involved a municipal donation to the Community Chest and was decided based upon Bourland v. Pollock, supra, which also involved a welfare association. Unless the Don E. Davis Center can be analogized to a public charitable institution, it must be concluded that the Court's apparent unwillingness to extend that ruling portends a successful challenge.
It is my opinion that an appropriation to a county-owned ambulance service is not contrary to Article 12, Section 5. It has been stated that the public policy of the state as expressed in its legislative enactments is entitled to weighty consideration in determining whether an appropriation is for a public purposes. 20 C.J.S. Counties 236 (1940). It is significant to note in this regard that counties have been granted explicit authority to provide ambulance services. A.C.A. 14-14-802(b)(2)(D)(e). It is also clear that a county may use "any available revenues" in connection with its authority to "own acquire, construct, reconstruct, extend, equip, improve, maintain, operate, sell, lease, contract concerning, or otherwise deal in or dispose of any land, buildings, improvements or facilities of any and every nature whatever that can be used for hospitals . . . or related facilities within or near the county." A.C.A. 14-265-103.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.