The Honorable Hoye D. Horn State Representative P.O. Box 64 Foreman, Arkansas 71836-0064
Dear Representative Horn:
This is in response to your request for an opinion on several questions concerning the "hamburger" tax dollars distributed by the Texarkana, Arkansas Advertising and Promotion Commission. Your questions will be set out below and answered in the order posed.
Your first question is as follows:
 A state statute provides for the auditing of public monies such as taxes. Let's suppose the money in this case is derived from revenue collected from a city's advertising and promotion tax and hamburger tax. If the city awards more than $250,000.00 annually to private entities such as the Four States Fairgrounds in Texarkana, Arkansas and the Perot Theatre in Texarkana, Texas, would those entities have to have the money allocated to them by the Texarkana, Arkansas Advertising and Promotion Commission audited? In most instances, the fair receives more than $75,000 annually. If you deem the money allocated to the private entities should be audited, to what extent and detail should this occur and who would the audit sheets be open to?
In response to your first question, it is my opinion that there is no state statute requiring an audit of private entities that receive the hotel and restaurant taxes to which you refer.[1] There are statutes which require the city and the city's advertising and promotion commission to be audited annually, either by an independent certified public accountant, or the Division of Legislative Audit. See A.C.A. §§ 14-58-307,14-47-126, and 10-4-202. Once these funds leave the control of the city, however, and come under the control of private entities, there is no state requirement of an audit. (The extent of any control retained or lost is a question of fact in each instance.) The Advertising and Promotion Commission and the city, however, would be well advised in contracting surrounding the distribution and use of these funds, to impose auditing requirements on such private entities.
Your second question is as follows:
 There is another state law stating if an item or service costs more than $5,000.00, city and county governments have to advertise and solicit bids for the item or service to insure the competitive spirit and good price. Keeping this in mind, if a private entity such as the fair referred to above receives public tax money in order to make capital improvements to the arena building, should competitive bids be solicited and advertised for from the contractors?
I have not been provided with any information regarding the exact nature of the contractual arrangement, if any, between the city and the fairgrounds regarding the distribution and use of these funds. Neither have I been provided with any information regarding the consideration, whether monetary or non-monetary, for such a contract. Because such factors may have a bearing on your question, it is therefore difficult for this office, in answering an abstract legal question, to determine whether competitive bidding is required. The question will turn upon whether the city is actually making the "purchases" in question. If, as your request suggests, the city merely appropriates money to these private entities for expenditure by the private entities without any restrictions or control by the city, it is my opinion that the requirement of competitive bidding does not apply to these private entities. (See, however, n. 1, supra, as to the constitutionality and legality of such a scenario.) If, additionally, the city appropriates money to these entities to be spent in the execution of a contract supported by adequate consideration, it is similarly my opinion that the private entity is not required to engage in competitive bidding in the execution of the contract. The nature and extent of control retained by the city over these purchases, however, and the contractual arrangement between the city and these entities, if any, will bear upon the question; and, if the level of control retained is significant, competitive bidding requirements may attach.
The relevant statute is A.C.A. § 14-47-138, which is applicable to cities with the city manager form of government.[2] It provides in pertinent part as follows:
 (a) Before making any purchase of or contract for any supplies; materials, or equipment, and before obligating the city under any contract for the performance of services or for the construction of municipal improvements, where the anticipated cost to the city of the transaction exceeds the maximum amount established by the board of directors under the authority of § 14-47-120, opportunity for competitive bidding shall be given under such rules and regulations as the board may, by ordinance, prescribe, and the contract shall be consummated only on a bid approved by the city manager and the board.
This statute requires competitive bidding for purchases made by the city and those contracts and purchases "obligating" the city. The question of whether this statute requires competitive bidding in the situation you describe will thus turn upon whether the "city" is making these purchases and obligating itself for the purchase price. Again, we have not been provided with all of the facts surrounding the distribution and use of these funds, and thus cannot give a definitive answer to your second question.
Your third question is as follows:
 By law, the mayor of Texarkana, Arkansas also serves as the chairman of the A P Commission. This is the commission that distributes money to the fairgrounds. However, the mayor also owns and operates exclusive food and liquor concessions in the Four States Fair Arena which has received more than $300,000.00 since 1989 for capital improvements from the A P tax. The mayor purchased the exclusive concession rights from a now deceased restaurateur and no bids were taken. When the commission is faced with a request from the fair association for money for capital improvements, the mayor does excuse himself from the meeting and does not vote. But, for every capital improvement made to the arena by the A P money, one would have to wonder if this does not benefit the mayor's business located in the same building. Given these considerations, could the mayor's business holdings at the fair and his chairmanship of the commission constitute a conflict of interest? Also, how much of his business dealings, such as disclosure of profits and expenditures, be [sic] open to the public inspection since he does hold public office?
In response to the first part of your question, the applicable statute in my opinion is A.C.A. § 14-47-137,[3] which provides at subsection (a)(1) as follows:
 No officer or employee elected or appointed in any city shall be interested, directly or indirectly, in any contract or job for work or materials, or the profits thereof, or service to be furnished or performed for the city unless the board of directors of the city shall have enacted an ordinance specifically permitting an officer or employee to conduct business with the city and prescribing the extent of this authority.
The question of whether this statute prohibits the conduct you describe will, again, involve the nature of the contractual relationship, if any, between the fairgrounds and the city. The statute would prohibit the mayor from being interested "directly or indirectly" in the profits of any "contract or job . . . or service to be furnished or performed for the city." It is unclear, under the facts presented in your request, whether any type of contract, or agreement for "services" supported by consideration exists between the city and the fairgrounds. If not, the proscription of A.C.A. § 14-47-137(a)(1) does not apply. Because, additionally, the statute carries a criminal penalty, it will be construed strictly. In any event, the city has the authority to authorize the mayor's interest in the contract by ordinance. Local ordinances on the subject would thus be of relevance.
In response to the second part of your third question, the mayor, as an elected public official, is subject to the requirements of the Code of Ethics found at A.C.A. §§ 21-8-301—309 (Cum. Supp. 1991) and 21-8-701—704 (Cum. Supp. 1991). These statutes require the filing of statements of financial interest by public officials. Disclosure of "profits and expenditures," however, are not required.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] If, as you suggest, the Advertising and Promotion Commission merely grants funds to private entities for expenditure as they see fit, this practice is violative of Arkansas Constitution, art. 12, § 5, and therefore unconstitutional. Cf. Gordon v. Woodruff County,217 Ark. 653, 232 S.W.2d 832 (1950). Arkansas statutes also prohibit the "general subsidy" of civic groups with "hamburger tax" dollars. A.C.A. § 26-75-606(a)(3)(A)(iii) and (c)(1)(C). We have not been provided with any facts, however, as to the exact nature of the transactions occurring between these private entities and the Advertising and Promotion Commission. Because this issue is not expressly raised in your request, and because it would require the determination of factual issues which is not appropriate in an official legal opinion, I can express no opinion thereon.
[2] The City of Texarkana operates under the city manager form of government.
[3] Again, this statute is applicable to cities with the city manager form of government.